## AFFIDAVIT

1.       Comes now, Philip Sipple, a Detective of the Kansas City, Missouri Police Department (KCMOPD), Drug Enforcement Unit Administrative Squad, and being duly sworn states: I am a Detective with the KCMOPD and have been so employed for approximately 19 years. I have been assigned to the Drug Enforcement Unit (DEU) for one year. I have previously served as a Detective in the Domestic Violence Unit, Traffic Investigations Section, and Street Narcotics Undercover Squad for a total of approximately four and a half years. I was assigned as a patrol officer for approximately thirteen and a half years. During my tenure in the DEU I have been involved in numerous investigations of individuals for importing and distributing controlled substances, and possessing and trafficking illegal firearms. I have communicated extensively with other state and federal law enforcement personnel who specialize in narcotics and firearms investigations. I have extensive experience interviewing defendants, participating witnesses, informants, and other persons with personal experience and knowledge of illegal drug and illegal firearms trafficking.

2.       This affidavit contains information necessary to support probable cause for this application. It is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observation during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during the investigation.

3.       On August 26, 2020, at approximately 3:00 p.m., Officer Nauyok, of the KCMOPD Shoal Creek Patrol Division Impact Squad was operating in an undercover capacity and conducting surveillance related to suspected on-going illegal drug trafficking activity at 4417 North Jackson

Avenue, Kansas City, Missouri. Officer Nauyok observed a white male who matched the description of Brian J. PONTALION (W/M, DOB: 1/22/2001 ), who investigators are familiar with through a separate investigation, enter a white colored Chevrolet Tahoe (SUV). Det Massey, Det Fenwick, and Det Florido of KCMOPD DEU positioned themselves to assist Officer Nauyok with surveillance of the Chevrolet Tahoe for the purpose of gathering intelligence related to the possibility of illegal drug trafficking acitivity at both the North Jackson residence, and by the occupants of the Tahoe.

4.      Det Massey maintained intermittent visual surveillance of the Chevrolet Tahoe as it traveled from 4417 North Jackson Avenue to West 13th Street and Wyandotte Street in downtown Kansas City, Missouri. During his surveillance of the vehicle, Det. Massey observed the Chevrolet Tahoe drive in an erratic manner, often at high speeds in excess of the posted speed limit. The driver of the Chevrolet Tahoe, later identified as PONTALION, committed numerous traffic violations to include speeding, illegal turns, driving the wrong way down a one way street and weaving in and out of other motorists during rush hour traffic. PONTALION's driving caused at least one other motorist to take evasive braking action.

5.      When the Chevrolet Tahoe came to a stop at West 13th Street and Wyandotte Avenue, marked patrol cars attempted to conduct a pedestrian check of PONTALION as he was exiting the driver's seat of the Chevrolet Tahoe. Officer Caudle observed PONTALION to have a blue bag on his shoulder. Upon observing the officers, hearing them call out his name, and informing him that he was under arrest, PONTALION immediately got back into the driver's seat of the Chevrolet Tahoe. PONTALION threw the blue bag into the Chevrolet Tahoe and fled in the vehicle, striking a police vehicle occupied by Officers Brulja and Rains, who were attempting to assist in the stop. PONTALION fled at a high rate of speed south bound, disregarding all traffic control signals and

signs, as well as other motor vehicle and pedestrian traffic. PONTALION came to a stop after losing control of the vehicle, leaving the roadway, and striking a light pole with the at West 16th Street and Baltimore Avenue.

6.     After colliding with the light pole, officers observed PONTALION attempting to climb out of the driver's side door window with the blue bag in his hand. The officers observed PONTALION throw the blue bag into the back seat of the Chevrolet Tahoe. PONTALION was taken into custody. An inventory of the Chevrolet Tahoe prior to towing revealed the blue bag in the back seat. Upon opening the blue bag, Officer Caudle observed what he believed to be methamphetamine, marijuana, LSD tabs, an assortment of unknown pills, a black digital scale, and a flip phone.

7.     Officer Caudle recovered the blue bag. A further search showed the contents of the bag to include:

   a. A clear baggie containing a crystal like substance weighing approximately 175.87 grams that would later indicate through the use of a Trunarc testing device as containing methamphetamine;

   b. A clear baggie containing a crystal like substance weighing approximately 119.01 grams that would later indicate through the use of a Trunarc testing device as containing methamphetamine;

   c. A clear baggie containing a white powdery substance weighing approximately 3.18 grams that would later indicate through the use of a Trunarc testing device as containing MDMA (more commonly known as ecstasy);

   d. A clear baggie containing a white powdery substance weighing approximately 0.85 grams that would later indicate through the use of a Trunarc testing device as containing ketamine;

   e. A clear baggie containing a brown powdery substance weighing approximately 1.46 grams that would later indicate through the use of a Trunarc testing device as containing opium alkaloids;

   f. A clear baggie containing a crystal like substance weighing approximately 1.9 grams that would later indicate through the use of a Trunarc testing device as containing methamphetamine;

g. 10 round purple pills marked "030" and "ABG" that were identified as morphine sulfate through the use of Drugs.com;

h. Clear baggies containing a green leafy substance weighing approximately 71.96 grams;

i. An unknown amount of what appear to be doses of LSD on cardboard tabs;

j. A black digital scale with residue; and,

k. A Verizon ZTE, black, flip cellular phone.

8. Once PONTALION was taken into custody and helped to his feet, Officer Tipton observed a black wallet on the ground where PONTALION was taken into custody. Officer Tipton could see a large amount of cash contained in the wallet, along with a torn piece of paper with numbers that, in my training and experience is consistent with a ledger for currency. Officer Tipton and Officer Madera conducted a count of the U.S. currency located in the wallet and found it to contain $3,125. Officer Madera recovered the U.S. currency.

9. At approximately 5:20 p.m., I escorted PONTALION from the East Patrol Detention Unit to an interview room. I advised PONTALION of his rights by reading the *Miranda* Waiver aloud. PONTALION advised that he understood his rights, signed the *Miranda* Waiver form, and agreed to talk to me.

10. I asked PONTALION why I would be talking to him, and he responded by saying the police tried to pull him over. PONTALION said he got scared and fled. PONTALION explained that he was the only person in the vehicle when the police attempted to stop him. PONTALION advised that the police pulled up to his vehicle and called out his name, which scared him, and he jumped back into the vehicle. PONTALION explained that as he fled he did strike a police vehicle, however he was not attempting to hurt anyone or put anyone in danger. When I asked PONTALION if he ran any stop signs, he stated, "probably". When I asked PONTALION if he

ran any red lights, he advised that was trying to drive "normally" and did not exceed 40 miles per hour. When I asked PONTALION if he had anything with him when he exited the vehicle at West 13th Street and Wyandotte Avenue, he advised that he had his cell phone. When asked about the "hip pouch," PONTALION finally admitted that he had the "hip pouch" hanging from his neck. When I asked what the contents of the "hip pouch" were, PONTALION admitted he knew there was Marijuana, mushrooms, and "dope" inside. When I asked what he meant by "dope," he mouthed the word "meth." When I asked PONTALION how much meth was contained inside the "hip pouch," he advised approximately 1 ounce. PONTALION refused to say who he received the meth from, and advised that he did not pay for it. PONTALION then requested an attorney. The interview ended and PONTALION was escorted back to the East Patrol Detention Unit.

11.     Based upon the aforementioned information and investigation, the affiant believes that there is probable cause to believe that Brian J. Pontalion violated the following federal laws:

    a.   **Title 21, United States Code, Section 841(a)(1), (b)(1)(A) & 846.**

    FURTHER AFFIANT SAYETH NAUGHT.

                    Philip Sipple, Detective
                    Kansas City, Missouri Police Department

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means on this 27th day of August 2020.

HONORABLE  JOHN T. MAUGHMER
United States Magistrate Judge
Western District of Missouri